Eliza J. McArthur, CSB No. 152312,
Email: Eliza@mcarthurlevin.com
Jeffery W. Maisen, CSB No. 271809,
Email: Jeff@mcarthurlevin.com
MCARTHUR & LEVIN
637 N. Santa Cruz Avenue
Los Gatos, CA 95030
(408) 741.2377 (Telephone)
(408) 741.2378 (Facsimile)

Attorneys for Plaintiff,
SEQUOIA UNION HIGH SCHOOL DISTRICT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SEQUOIA UNION HIGH SCHOOL DISTRICT,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>M.C.., individually and by and through Y.C. and Y.L., her Parents, and DOES 1-10, inclusive,<br><br>　　　　　Defendants. | Case No.:<br><br>COMPLAINT FOR APPEAL OF ADMINISTRATIVE DECISION UNDER 20 U.S.C. §1415(i)(2) |

　　　　Plaintiff in the above-captioned matter, SEQUOIA UNION HIGH SCHOOL DISTRICT, as causes of action against the defendants M.C., individually and by and through Y.C. and Y.L., her parents, and DOES 1-10, inclusive, alleges as follows:

//

COMPLAINT - 1

## JURISDICTION AND DIVISIONAL ASSIGNMENT

1. This action is brought before this Federal District Court under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §1400, *et seq*. and California Education Code §56000, *et seq*., which implements 20 U.S.C. §1400 *et seq*. in California.

2. This action is brought by Plaintiff Sequoia Union High School District in order to appeal portions of the April 20, 2022, Decision and Order of Administrative Law Judge ("ALJ") Linda Dowd, of the California Office of Administrative Hearings ("OAH"), in the case of *Parents on Behalf of Student [M.C.] v. Sequoia Union High School District,* OAH Case No. 2021110212 (**Exhibit A**).

3. Jurisdiction is conferred upon this Court under 20 U.S.C. §1415(i) and under 28 U.S.C. §1331. Venue is invoked pursuant to 28 U.S.C. §1391.

4. Pursuant to CAND Civil Local Rule 3-2(d) of this Federal District Court, assignment to the San Francisco Division of this Court is proper because all or most of the events giving rise to Plaintiff's claims occurred in San Mateo County.

## PARTIES

5. Plaintiff, Sequoia Union High School District (hereafter, "District" or "SUHSD"), at all times herein mentioned, was and is a local school district duly formed under the laws of the State of California, providing programs and services relating to education of the handicapped under the IDEA, 20 U.S.C. §1400 et seq., California Education Code §56000 et seq., and the regulations issued pursuant to Title 5 of the California Code of Regulations. District is a local education agency within the meaning of 20 U.S.C. §1415(a) and is a party aggrieved by the findings and decision resulting from a hearing pursuant to 20 U.S.C. §1415.

6. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, defendant M.C. (hereinafter, "M.C." or "Student") resides with her parents Y.C. and Y.L. in Santa Mateo County, California, within the school attendance boundaries of District, and was the petitioner in the underlying administrative hearing - OAH Case No. 2021110212.

1   7.   Defendants, Y.C. and Y.L., are the parents of Student, an adult who was a minor during the time period examined in the underlying administrative hearing decision.

8.   The true names and capacities of defendants named herein as DOES 1 through 10, inclusive, are unknown to Plaintiff. Plaintiff will insert their true names and capacities when the same have been ascertained. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named defendants are in some manner responsible for the occurrences herein alleged, and that Plaintiff's claims as herein alleged were proximately caused by these defendants.

## LEGAL FRAMEWORK OF PLAINTIF'S CLAIM

9.   The IDEA provides at 20 U.S.C. §1415(i)(2):

> Any party aggrieved by [Hearing Officer's] findings and decision… …shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy.
> …In any action brought under this paragraph, the court-
> shall receive the records of the administrative proceedings;
> shall hear additional evidence at the request of any party;
> basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

## FACTUAL BACKGROUND

10.  Student, at the time of the underlying administrative hearing decision below, was a seventeen-year-old student whose parents resided in the boundaries of SUHSD, a local school district located within San Mateo County.

11.  The time period examined in the underlying administrative hearing was from May 2020 through the beginning of SUHSD's 2021-2022 school year. During this time period, Student

COMPLAINT - 3

1 | initially attended Woodside High School, a high school within SUHSD, before eventually attending unilaterally procured residential treatment programs chosen by her and her Parents.

12. Student was not identified as a special education student, within the meaning of IDEA, prior to December 17, 2020.

13. Student first became eligible for special education under the eligibility category of emotional disturbance ("ED") at Student's initial IEP meeting on December 17, 2020. In connection with this IEP meeting, District conducted an initial assessment for special education of Student following Parents' request for special education assessment and consent to District's initial assessment plan of October 2, 2020.

14. Prior to District issuing an initial assessment plan to Student on October 2, 2020, Student largely excelled at school and was enrolled in a rigorous schedule of academic study that consisted of several advance placement courses at Woodside High School.

15. Student's education during the 2019-2020 school year was interrupted due to COVID-19-related school closures that impacted Woodside High School in March 2020. Woodside High School remained closed in Spring 2020 due to COVID-19 but provided distance learning to Woodside High School students, including Student. Relatedly, District's timeline for responded to any new referral for special education assessment was tolled during the time period of COVID-19 related school closures.

16. Student did not demonstrate any overt signs of emotional distress in relation to school in spring and fall 2020. However, Student's Parent did email Student's teachers and school counselor on or about May 2020 to inform them that Student was being considered for placement in a residential rehabilitation facility due to concerns over her mental health. The cause of Student's mental health concerns was unrelated to Student's education at Woodside High School.

17. In order to support Student, Student's teachers initially offered to accommodate her school assignments for the remainder of the 2019-2020 school year given, among other things, Parent's specific request for an accommodation, Student's high academic marks in relation to the remaining time left in the 2019-2020 school year, and the common use of such accommodations

with other similarly situated students returning to school following the initial period of Covid-related school closures. Additionally, Student's school counselor, as well as other District staff members, met virtually with Student and Parents and regularly communicated with them about Student's needs between the time of Parent's emails on or about May 2020 and District's offer of special education assessment on October 2, 2020.

18. While Student did briefly attend an in-patient treatment program over the summer between the 2019-2020 and 2020-2021 school years, the placement was for non-educational reasons and without notice to District. Further, Parents discharged Student from the in-patient treatment program prior to its completion and the pursuit of the summer in-patient treatment program was initiated by Student, as opposed to any recommendation by Student's then-private providers.

19. Student returned to Woodside High School at the commencement of the 2020-2021 school year and continued to pursue a rigorous schedule of academic study that included placement in advance placement courses. Student's initial functioning at both Woodside High School and home at the commencement of the 2020-2021 school year was unremarkable.

20. The 2020-2021 school year commenced on August 17, 2020. On September 9, 2020, Student emailed her English teacher and school counselor to express concerns about her mental health and to inquire about support under a Section 504 plan. Thereafter, members of the Woodside High School student intervention team initiated its student support process, including the Section 504 process, and sought updated information about Student's then-functioning and needs from Parents and Student's teachers.

21. Student attempted suicide at home on September 16, 2020 while District and Parents were in the process of coordinating Student's initial Section 504 meeting and obtaining updated information about Student's functioning and needs. Student's Section 504 team initially met on September 24, 2020 and again on October 2, 2020. Student's September 24, 2020 Section 504 team, which included Parents, developed and agreed upon a Section 504 support plan for Student that consisted of several different interventions. A referral for special education was not

made at the time of the September 24, 2020 Section 504 meeting. However, Student's Section 504 team, which included members of the Woodside High School student intervention team, were aware that a referral for special education could be made if necessary. Similarly, Student's teachers and District staff members were aware of Woodside High School's student intervention process and that this process included consideration of whether a student might need special education or a referral for assessment at any point in time.

22. On September 28, 2020, Parents sent a letter to District's Special Education Director requesting an initial assessment for special education. Student's Section 504 team reconvened on October 2, 2020 to consider, among other things, Parents' request for assessment. An offer for District assessment was made on October 2, 2020 after District appropriately considered and used general education interventions, through its student intervention process, before offering to conduct an assessment.

23. District conducted an initial assessment for special education of Student following Parents' request for special education assessment and consent to District's initial assessment plan offer of October 2, 2020. District's initial assessment of Student included, among other things, input from Parents, Student, and Student's therapist at Evoke, a unilaterally procured therapeutic wilderness program that Student was attending at the time of the assessment. District's initial assessment also considered and incorporated the results of a private assessment that was conducted of Student by an assessor associated with Evoke.

24. Student's initial IEP meeting was held on December 17, 2020 with all required members of Student's IEP team, including Parent. Parents residential placement consultant also attended the IEP meeting. The results of Student's initial assessment were reviewed in detail by the IEP team. All team members, including Parents and their residential placement consultant, were given repeated opportunities during the IEP meeting to participate, ask questions, and express disagreement about each component of Student's initial IEP process, including Student's IEP goals, placement, and services. Additionally, the continuum of special education placement options available to Student was considered and discussed in detail with Parents and the District

members of the IEP team, as were Student's present levels of functioning, areas of need, and IEP goals.

25. In consideration of the December 17, 2020 IEP team's input, including Parents, and the information known and made available to the IEP team at the time of the IEP meeting, District ultimately provided Student with one IEP offer consisting of, among other things, special education placement at Diamond Ranch Academy, a therapeutic residential treatment center and school located in Hurricane, Utah, annual IEP goals, and related therapeutic services. The District members of Student's initial IEP team, who are credentialed, trained, and qualified California special education service providers with years of experience serving students on IEPs with therapeutic needs, all agreed with the appropriateness of District's initial IEP offer to Student. Further, Diamond Ranch Academy is a certified special education placement and service provider through the California Department of Education that is authorized to serve Students on IEPs, including students qualifying under the special education eligibility category of ED.

26. District facilitated Parents direct communication with Diamond Ranch Academy after the conclusion of the December 17, 2020 IEP meeting to allow Parents the opportunity to address any questions or concerns that they did not raise at the time of the IEP meeting. Parents never contacted Diamond Ranch Academy for this purpose.

27. In the days following the December 17, 2020, IEP meeting, Parents expressed agreement with Student's need for placement in a residential treatment program but expressed specific concerns about the appropriateness of District's offered placement at Diamond Ranch Academy. In consideration of these concerns, Parents requested placement of Student at New Haven Residential Treatment Center ("New Haven"), a residential treatment center located in Spanish Fork, Utah.

28. On January 6, 2021, District initially responded to Parents' request for placement at New Haven by reiterating the continued availability of its initial offer of Diamond Ranch Academy. Thereafter, on January 7, 2021, Parents emailed District and provided notice of their

intent to unilateral place Student at New Haven at public expense with the intent to seek reimbursement from District.

29. District responded to Parents' notice of unilateral placement on January 21, 2021, through the provision of a Prior Written Notice, after seeking input from Diamond Ranch Academy about Parents' specific concerns that precipitated their unilateral placement at New Haven. District, through its Prior Written Notice, responded to each of Parents' specific concerns and further clarified its IEP offer in consideration of them. Additionally, District requested additional input and information from Parents and Student's private providers in connection with Parents' request for placement at New Haven at public expense. District specifically requested an IEP meeting to further address Parents' input and request through the IEP process.

30. On February 10, 2021, the IEP team, including Parents and their attorney, met to further discuss Parents' input and concerns about the appropriateness of District's offered placement. A representative from Diamond Ranch Academy also attended the IEP meeting to further speak to any specific questions or concerns about District's offered IEP. In consideration of the February 10, 2021 IEP team's input, which included the input of Parents, their attorney, Diamond Ranch Academy, and the written input of Student's private providers, and the information known and understood at the time, District, reiterated its offer of Diamond Ranch Academy to Parents based upon District's belief in its continued appropriateness. The District members of Student's February 10, 2021 IEP team, who are credentialed, trained, and qualified California special education service providers with years of experience serving students on IEPs with therapeutic needs, all agreed with the appropriateness of District's IEP offer to Student. Parents declined this offer and maintained Student's unilateral placement at New Haven.

31. On May 14, 2021, Parents through their attorney, provided a ten-day notice of change of placement from New Haven to Lake Tahoe Preparatory School ("Lake Tahoe Prep"), a private residential boarding school in Olympic Valley, California.

32. On May 26, 2021, the IEP team, which included Parents, their attorney, and representatives from New Haven and Lake Tahoe Prep, met to discuss Parents' notice of unilateral

placement at Lake Tahoe Prep and proposed exit from New Haven. At the IEP meeting, the New Haven representatives shared that Student had not completed its program and was leaving New Haven early at the request of Parents, as opposed to the recommendation of Student's New Haven treatment team. In consideration of New Haven's input and the information known and understood at the time of the May 26, 2021 IEP meeting, District continued to offer Diamond Ranch Academy as Student's placement, and reiterated its belief in the continued appropriateness of said IEP placement given Student's functioning and needs at the time of the IEP meeting. The District members of Student's May 26, 2021 IEP team, who are credentialed, trained, and qualified California special education service providers with years of experience serving students on IEPs with therapeutic needs, all agreed with the appropriateness of District's IEP offer to Student. Parents declined this offer and placed Student at Lake Tahoe Prep before Student eventually returned to Woodside High School, a comprehensive high school within Sequoia Union High School District, at the beginning of the 2021-2022 school year.

33. On November 4, 2021, defendant's parents, Y.C. and Y.L., on behalf of Student, filed a special education due process complaint with OAH, naming SUHSD as respondent – OAH Case No. 2021110212.

34. A hearing on issues related to the above facts was held before ALJ Linda Dowd of the California OAH on February 8, 9, 10, 15, 16, 17, 18, 2022, and March 8, 9, and 10, 2022. Student's underlying administrative proceeding asserted 5 issues[1] challenging the substantive and procedural aspects of Student's special education program, during the relevant time period examined in the underlying administrative hearing. The Decision on this hearing was issued on April 20, 2022 and it included a remedy of reimbursement to Parents for the costs associated with their unilateral placements.

35. Through this appeal, District asserts that Issues 1, 2.a., 2.b., 2.d., 3, and 4 of the underlying hearing in OAH Case No. 2021110212 were incorrectly decided, and that the remedies

---

[1] Issue 2 contains 4 sub-issues.

ordered and prevailing party status in the decision pertaining to Issues 1, 2.a., 2.b., 2.d., 3, and 4 were inappropriate.

## FIRST CAUSE OF ACTION

36. Plaintiff realleges and incorporates herein by this reference the allegations contained in paragraphs 1 through 35 above.

37. District is a party aggrieved by the finding and decisions of a state administrative agency pursuant to 20 U.S.C. § 1415(i)(2)(A) in that the OAH decision with respect to Issues 1, 2.a., 2.b., 2.d., 3, and 4 was substantially erroneous, wrongly decided, not supported by sufficient evidence or by the law, and OAH was not thorough and careful in the findings.

38. OAH's findings against District with respect to Issues 1, 2.a., 2.b., 2.d., 3, and 4 are legally erroneous and contradicted by the facts as found by OAH. Further, even if OAH's findings were not erroneous, OAH's reimbursement order was equitably excessive and has no connection to the alleged harm determined in the decision.

39. As an aggrieved party, District has a right to seek *de novo* review of the administrative decision of OAH in Case No. 2021110212 before this Court.

40. Based on the allegations above, Plaintiff requests that this Court receive the records of the administrative proceedings below, hear additional evidence that Plaintiff may submit, allow Plaintiff to object to any evidence that Defendant may seek to add, and render a decision based upon the preponderance of the evidence in order to grant such relief as the Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

1. Render judgment in Plaintiff's favor by vacating the ALJ's decision and finding in favor of Plaintiff to the extent of Plaintiff's appeal;

2. For such other and further relief as this Court deems just and proper.

Dated: July 19, 2022

Respectfully submitted,

MCARTHUR & LEVIN

/s/ Jeffery W. Maisen
By: Jeffery W. Maisen